UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GULAMNABI VAHORA,** | **1:16-cv-1624-LJO-SKO** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS (Doc. 8)** |
| **v.** | |
| **SHEIKH M. MASOOD, NAEEM MUJTABA QARNI, NAJAM UL MUJTABA QARNI, AND VALLEY DIAGNOSTICS LABORATORY, INC.,** | |
| **Defendants.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1    Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

2    Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout

3    the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to

4    reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

5                                    **II. <u>INTRODUCTION</u>**

6            Plaintiff Gulamnabi Vahora ("Dr. Vahora"), brings this action against Defendants Shiekh M.

7    Masood ("Dr. Masood"), Naeem Mujtaba Qarni ("Naeem"), Najam Ul Mujtaba Qarni ("Najam"), and

8    Valley Diagnostics Laboratory, Inc. ("VDL"), for their alleged "breach of oral contract, breach of the

9    implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, violation of

10   California's Unfair Competition Law ("UCL"), civil conspiracy to commit fraudulent deceit, intentional

11   misrepresentation, [and] conversion." Complaint ("Compl."), Doc. 1 at 1. These causes of action arise

12   from an alleged oral agreement between Dr. Vahora and Naeem to partner for the purposes of

13   purchasing and operating a medical diagnostic testing company, VDL.

14          Defendants Dr. Masood, Naeem, and VDL (collectively, "Defendants") move to dismiss Dr.

15   Vahora's Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] The Court took the matter under

16   submission on the papers pursuant to Local Rule 230(g). Doc. 3-1. For the following reasons, the Court

17   DENIES and GRANTS IN PART Defendants' motion to dismiss.

18                        **III. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]**

19          Dr. Vahora is an individual residing in Wayne, Pennsylvania. *See* Compl. ¶ 1. He has owned and

20   operated multiple businesses engaged in medical diagnostic testing and claims to be the majority-owner

21   of VDL. *Id.* ¶¶ 21, 60.

22          VDL is a corporation organized under the laws of the state of California with its principal place

_____

24   [1] All further references to any "Rule" are to the Federal Rules of Civil Procedure unless otherwise stated.

25   [2] The following facts are drawn from Dr. Vahora's Complaint and are assumed as true for purposes of Defendants' motion. *See Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

of business in Madera, California. *Id.* ¶ 2. VDL also operates from a second office located in Fresno, California. *Id.* ¶ 3. VDL is engaged in medical diagnostic testing. *Id.* ¶ 31.

Naeem is an individual residing in Clovis, California. *Id.* ¶ 4-5. He is the agent for service of process for VDL, and is VDL's President and part-owner. *Id.* ¶ 6-7.

Najam is an individual residing in Ontario, Canada. *Id.* ¶ 8-9. He is Naeem's brother and Dr. Vahora's former employee. *Id.* ¶¶ 22-24.

Dr. Masood is an individual residing in Madera, California. *Id.* ¶ 10-11. Dr. Masood and Naeem are related by marriage: Dr. Masood's son is married to Naeem's daughter. *Id.* ¶ 29.

Dr. Vahora brings this case under the Court's diversity jurisdiction. *Id.* ¶ 12 (citing 28 U.S.C. § 1332(a)).

Prior to March 2012, Naeem resided in Pakistan. *Id.* ¶ 25. He wanted to move to the United States under the E-2 Investor visa program, which required him "to invest a substantial amount of capital in the purchase and ownership of a United States business." *Id.* ¶ 25-26.

To facilitate Naeem's visa, Dr. Masood and Najam decided that Naeem should purchase a medical business because "that is the field of Dr. Masood's expertise." *Id.* ¶ 29. Dr. Masood identified VDL as a potential investment. *Id.* ¶ 31. VDL's then-owner and non-party Dr. Muhammad Saeed ("Dr. Saeed") sought a sale price of $400,000 for the business. *Id.* ¶¶ 32-33.

In March 2012, Najam contacted Dr. Vahora and informed him of Naeem's situation. *Id.* ¶¶ 22, 25, 26. Najam, Dr. Masood, and Naeem sought Dr. Vahora's assistance in the analysis and purchase of VDL "because of Dr. Vahora's extensive experience in the operation and valuation of such medical laboratory businesses." *Id.* ¶¶ 30, 34.

Dr. Vahora agreed to help and "engaged in a systematic analysis of VDL's value, and modeled the number of laboratory samples required to achieve profitability." *Id.* ¶ 35. As part of his analysis, Dr. Vahora visited the Madera location of VDL several times at his own expense. *Id.* ¶ 36. He met with Dr. Saeed and Dr. Masood, and reviewed "copious information about VDL." *Id.* ¶¶ 36, 39. "Upon

1    completion of his analysis . . . Dr. Vahora determined that VDL was worth no more than $200,000." *Id.*

2    ¶ 41.

3          Throughout the valuation process, Najam and Dr. Masood suggested to Dr. Vahora that he

4    should partner with Naeem in the purchase of VDL. *Id.* ¶¶ 37-38. Once Dr. Vahora's valuation of VDL

5    was complete, the men "both increased their campaign to convince Dr. Vahora to invest in VDL in

6    partnership with Naeem." *Id.* ¶ 42. Najam represented that Naeem "would serve as a competent lab

7    manager and a worthy partner in ownership of the lab," *id.* ¶ 43, and Dr. Masood represented that

8    "partnering with Naeem to purchase the lab[] was an excellent investment." *Id.* ¶ 44. However, at that

9    time, "Naeem worked in the finance industry . . . in his native Pakistan, and had no relevant experience

10   operating a medical diagnostic laboratory." *Id.* ¶ 45.

11         Thereafter, "Naeem formally asked Dr. Vahora to be his partner in VDL." *Id.* ¶ 46.

12         Dr. Masood, on behalf of Naeem, negotiated the terms of the partnership with Dr. Vahora. *Id.* ¶

13   47. The terms of the agreement were as follows:

14      • Dr. Vahora and Naeem would jointly purchase VDL for $200,000;
        • Dr. Vahora and Naeem would each contribute $100,000 to the purchase of
15        VDL;
        • Dr. Vahora and Naeem would be equal partners in VDL, with the potential of
16        Dr. Saeed and Dr. Masood having small ownership interests therein by
          subsequent mutual agreement;
17      • Naeem would apply for legal immigrant status in the United States pursuant to
          the E-2 Treaty Investor program;
18      • Dr. Vahora would teach Naeem how to operate and manage VDL; and
        • Naeem would run the day-to-day operations of VDL and have the title of
19        President of VDL.

20   *Id.* ¶ 48.

21         On April 17, 2012, Naeem e-mailed Dr. Vahora to confirm the terms of the partnership

22   agreement reached by Dr. Vahora and Dr. Masood on behalf of Naeem. *Id.* ¶ 49.

23         In July 2012, Dr. Vahora and Naeem purchased VDL for $200,000. *Id.* ¶ 55. Although the sales

24   agreement for VDL identified Naeem as the sole purchaser, Dr. Vahora claims VDL was acquired

25   pursuant to Dr. Vahora's and Naeem's oral agreement to "form an equal partnership for the purchase,

4

1   ownership and management of VDL." *Id.* ¶ 54. Further, Naeem contributed only $80,000 towards the

2   purchase price, whereas Dr. Vahora contributed $120,000. *Id.* ¶¶ 58-59.

3        As a result of the changed contribution amounts, Dr. Vahora contends the partnership became "a

4   de facto 60/40 partnership, with Dr. Vahora owning a 60 percent interest in VDL and Naeem owning a

5   40 percent interest in VDL." *Id.* ¶ 60. Dr. Vahora believes that Naeem subsequently "diluted his 40

6   percent ownership in VDL by selling and/or sharing a portion of his interest in VDL with Dr. Saeed

7   and/or Dr. Mahmood and/or Najam and/or third parties without the consent of Dr. Vahora." *Id.* ¶ 70.

8        Sometime around October 2012, "Dr. Vahora began to teach Naeem how to operate a medical

9   diagnostic laboratory." *Id.* ¶ 72. Dr. Saeed stayed on at VDL as a technical advisor because "Naeem was

10  unable to run the laboratory on a daily basis as he had promised." *Id.* ¶¶ 74-75.

11       VDL could not pay its own expenses. *Id.* ¶ 73. "Naeem represented to Dr. Vahora that he was

12  without sufficient assets to contribute to VDL's operating and overhead expenses." *Id.* ¶ 75. As a result,

13  Dr. Vahora was left responsible for funding VDL's operations. *Id.* ¶¶ 73, 75. He "provided large

14  amounts of supplies to VDL, and infused VDL with enormous amount[s] of operating capital," *Id.* ¶ 73,

15  and paid Dr. Saaed's salary. *Id.* ¶ 75. "In total, Dr. Vahora spent in excess of $380,000 on VDL's

16  operating expenses, payroll, rent and other daily expenses." *Id.* ¶ 101.

17       At the same time, Naeem wanted a salary and a loan from VDL. *Id.* ¶ 77. In October 2012, Dr.

18  Vahora and Naeem reached an agreement over the telephone for Naeem's salary and loan. *Id.* ¶ 78. The

19  terms of the agreement were as follows:

20  - Naeem would take responsibility for ordering VDL marketing supplies from Pakistan, so that Dr. Vahora no longer was compelled to provide them;
21  - VDL would hire a new laboratory technician, whom Dr. Saeed would supervise;
22  - VDL would offer and advertise and [sic] increased array of services, including in-home and nursing home blood draws;
23  - Naeem's loan from VDL would be "paid off through my profit income over a period of time"; and
24  - Naeem's monthly salary would initially be $3,000, with a raise to $5,000 based on his attainment of certain criteria.

25

5

*Id.* ¶ 79. Naeem subsequently sent Dr. Vahora an email confirming the terms of the agreement. *Id.*

"However, even after several months on the job and with Dr. Saeed and the existing staff on the premises, Naeem exhibited great difficulty running VDL." *Id.* ¶ 80. Under Naeem's management, VDL was processing only twenty specimens per day. *Id.* ¶ 84. Naeem was unable to grow the business and "depended entirely upon Dr. Vahora's continual infusion of funds beyond the initial $120,000 investments in order to keep VDL afloat." *Id.* ¶¶ 85-86. Naeem "improperly raised his own salary from $3,000 to $5,000," *id.* ¶ 87, even though VDL "could not afford to pay Naeem the sum of $5,000 per month, in light of its unprofitable status." *Id.* ¶ 88. In addition, Naeem he used VDL funds for his own personal expenses. *Id.* ¶ 89.

By the end of 2012, "VDL was in a state of managerial disarray and fiscal crisis." *Id.* ¶ 90. It became "evident to Dr. Vahora that Naeem's value to VDL was significantly lower than Najam and Dr. Masood had represented to Dr. Vahora prior to his entering the partnership with Naeem." *Id.* ¶ 83. Therefore, in December 2012, Dr. Vahora took on a more proactive role in VDL's daily management and Naeem's role was limited to maintaining VDL's finances and executing Dr. Vahora's instructions. *Id.* ¶¶ 92-93.

Dr. Vahora hired Alfonso Flores ("Flores") as VDL's full-time Vice President of Sales. *Id.* ¶ 94. Under Dr. Vahora's and Flores's direct management, VDL's productivity "immediately and dramatically" increased. *Id.* ¶ 103. "[I]n the first eight days of January 2013, VDL made 290 requisitions, as compared with 20 requisitions per month when the lab was under Naeem's sole daily control." *Id.* ¶ 104.

From December 2012 through early 2013, Naeem regularly sought funds from Dr. Vahora, "purportedly to support VDL's operations," despite VDL's increases in productivity. *Id.* ¶¶ 112-32. As a result, by January 30, 2013, Dr. Vahora required Naeem to submit detailed expense reports because his confidence in Naeem's ability to manage VDL and its finances was "completely eroded." *Id.* ¶ 119.

"By June 2013, VDL's financial situation under Naeem's daily mismanagement was dire." *Id.* ¶

131. Dr. Vahora realized Naeem was not fit for his position and began seeking a replacement, while "continu[ing] to function as VDL's at-large manager and decision-maker regarding laboratory operations." *Id.* ¶¶ 135-36.

Naeem, acting on behalf of VDL and without Dr. Vahora's consent or knowledge, violated Flores's employment contract by "terminat[ing] Flores's employment at VDL, effective July 1, 2013." *Id.* ¶¶ 139, 141, 143. On July 3, 2013, Naeem informed Flores via email "that Dr. Vahora was no longer involved with VDL." *Id.* ¶ 138. Flores subsequently forwarded the email to Dr. Vahora. *Id.* ¶ 140.

At some point prior to July 10, 2013, "Naeem informed Dr. Vahora that he no longer wished to partner with Dr. Vahora in the ownership or management of VDL." *Id.* ¶ 142. On July 10, 2013, Dr. Vahora sent Naeem an email expressing his disagreement with Naeem's decision to terminate Flores's employment. *Id.* ¶ 143. In the email, Dr. Vahora stated that they should honor Flores's employment contract. *Id.*, Ex. 37 at 1. Naeem did not respond to Dr. Vahora's email. *Id.* ¶ 145. Dr. Vahora sent Naeem four additional emails regarding Flores on July 12, 16, 18, and 21, 2013, all of which Naeem ignored. Compl. ¶¶ 144-45. "In desperation, Dr. Vahora reached out to Defendant Najam in search of a way to reach Naeem, to wind down the partnership, and to address management and ownership of VDL, to no avail." *Id.*

Dr. Vahora wrote Naeem a sixth email on July 27, 2013. *Id.* ¶ 147. In the email, Dr. Vahora stated that he had "not received any proposal in writing for resolving any issue in partnership." *Id.* ¶ 147. He explained that "[i]f by the first of August 2013 . . . [he] did not receive any written document from [Naeem], then . . . [he] w[ould] come to Madera and legally take over the lab." *Id.* Dr. Vahora also noted that Naeem, "[a]fter seeing this future," was "trying to conspire against [him] and throw [him] out," because he "want[ed] to get all the benefits and share it with [his] co-conspirator." *Id.*, Ex. 39 at 3.

"In a subsequent telephone conversation, Naeem agreed to submit a written proposal to Dr. Vahora to liquidate their partnership, but he never did so [despite] numerous follow-up requests from Dr. Vahora." Compl. ¶ 148.

On July 31, 2013, Naeem sent Dr. Vahora an email, wherein he stated that he was willing to pay Dr. Vahora "back a justifiable amount, in a mutually agreed manner, within a mutually agreed time frame." *Id.* ¶ 150. Dr. Vahora understood Naeem's proposal to mean that Naeem wanted to "continue to own and manage the lab himself." *Id.* ¶ 151. Dr. Vahora did not accept Naeem's proposal. *Id.*

Dr. Vahora replied to Naeem's email on the same day, offering two alternative proposals. *Id.* ¶¶ 154-55.  Naeem refused both. *Id.* ¶ 155.

Naeem has denied the existence of his partnership with Dr. Vahora in VDL.[3] *Id.* ¶ 160. Dr. Vahora has not been compensated for his contributions to VDL's operating capital, for his contributions towards the purchase of VDL, for his valuation of VDL prior to its purchase, or for his time and effort in managing VDL. *Id.* ¶¶ 162-65. Dr. Vahora has not shared in any portion of VDL's profits, "nor has he benefited in any way from VDL's losses." *Id.* ¶ 166. "Dr. Vahora has in all respects been deprived of his rights, title and ownership interest in VDL or any profits and losses arising therefrom." *Id.*

Dr. Vahora commenced this action on October 26, 2016. *See* Compl. In his Complaint, Dr. Vahora brings nine claims for relief: (1) breach of oral contract against Naeem; (2) breach of the implied covenant of good faith and fair dealing against Naeem; (3) unjust enrichment against Naeem and VDL; (4) promissory estoppel against Naeem; (5) violation of California's UCL against all Defendants; (6) civil conspiracy to commit fraudulent deceit against Naeem, Najam, and Dr. Masood; (7) intentional misrepresentation against Naeem, Najam, and Dr. Masood; (8) conversion against Naeem; and (9) declaratory relief against Naeem and VDL. *Id.* at 24-39.

On January 9, 2017, Defendants moved to dismiss Dr. Vahora's entire Complaint. Doc. 8. On February 1, 2017, Dr. Vahora filed his Opposition to Defendants' motion. Doc. 12. On February 8, 2017, Defendants filed their Reply. Doc 13.

---

[3] While the Complaint contains dates for many of the communications and events constituting the basis for the creation and dissolution of the partnership agreement, it is silent with regard to when Naeem denied the existence of his partnership with Dr. Vahora.

# IV. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

1

## V. <u>REQUESTS FOR JUDICIAL NOTICE</u>

2      Both parties have attached documents to their pleadings and request that the Court take judicial

3  notice of them. In Defendants' Motion to Dismiss, Defendants ask this Court to take judicial notice of

4  the complaint from Flores's lawsuit against VDL and Naeem, filed on October 11, 2013 in Madera

5  County. Doc. 8-2 at 16-17. Defendants assert that the Flores complaint is a matter of public record, and

6  that under Fed. R. Evid. 201, this Court may consider "the complaint mentioned in [Dr. Vahora's]

7  pleadings" *Id.* at 13.

8      In Dr. Vahora's Opposition, he attached an affidavit in support of his Opposition as an exhibit,

9  without further explanation. Doc. 12, Ex. 1.

10      A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint

11  refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

12  authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

13  2006). A court may treat such a document as "part of the complaint, and thus may assume that its

14  contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342

15  F.3d 903, 908 (9th Cir. 2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6)

16  motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v.*

17  *FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). A "court may disregard allegations in the complaint if

18  contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau*

19  *of Reclamation*, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d

20  1265, 1267 (9th Cir. 1987)).

21      Additionally, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public

22  record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*,

23  803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of

24  public record outside the pleadings"). However, "in ruling on a motion to dismiss pursuant to Rule

25  12(b)(6), a court may not 'look beyond the plaintiff's complaint' to matters outside the pleadings, unless

1   the Court refers to judicially noticeable facts or matters of public record." *Adobe Systems Inc. v. Blue*

2   *Source Group, Inc.*, 125 F. Supp. 3d 945, 967 (N.D. Cal. 2015) (quoting *Shaw v. Hahn*, 56 F.3d 1128,

3   1129 n. 1 (9th Cir. 1995)). Such "matters outside the pleadings" include affidavits attached in support of

4   an opposition. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980).

5          Accordingly, because Dr. Vahora attached a sworn statement from the Flores lawsuit to his

6   Complaint, the events constituting the Flores lawsuit are central to Dr. Vahora's claim, and the Flores

7   complaint is a matter of public record, the Court takes judicial notice of the Flores complaint. *See*

8   *Marder*, 450 F.3d at 448. The Court does not take judicial notice of Dr. Vahora's affidavit in support of

9   his Opposition because it contains matters outside the pleadings and, accordingly, is not judicially

10  noticeable. *See Lucas*, 633 F.2d at 759.

11                                          **VI. <u>ANALYSIS</u>**

12         Defendants argue that Dr. Vahora's causes of action for breach of oral contract, breach of the

13  implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, civil conspiracy

14  to commit fraudulent deceit, intentional misrepresentation, and conversion are all barred by the statute of

15  limitations. Doc. 8-1 at 14-21. Defendants also argue that Dr. Vahora's fifth cause of action for

16  violations of California's UCL fails to state a claim for which relief can be granted because Dr. Vahora

17  "has not plead unfair, fraudulent or deceptive business practices." *Id.* at 18 (internal quotation marks

18  omitted). Defendants contend that Dr. Vahora's eighth cause of action for conversion fails to state a

19  claim because Dr. Vahora has not alleged that Defendants exercised dominion and control over "specific

20  chattel." *Id.* at 21. Last, Defendants assert that Dr. Vahora's ninth cause of action for declaratory relief

21  has failed to state a claim because all of the "prior causes of action" are barred by the statute of

22  limitations. *Id.*

23         Dr. Vahora avers that his claims were timely made and that the statute of limitations does not bar

24  any of his causes of action. Doc. 12 at 10-23. With respect to his fifth cause of action for violations of

25  California's UCL, Dr. Vahora argues that the Complaint alleges facts necessary to create a "legal basis

1  for Dr. Vahora's recovery under UCL," and that the Defendants' "conclusory argument is simply

2  wrong." *Id.* at 24. Dr. Vahora contends that he may recover on a conversion theory, and that the

3  Complaint properly identifies the property converted. *Id.* at 25. Accordingly, Dr. Vahora contends that

4  he is entitled to declaratory judgment. *Id.*

5     **1.   Breach of Oral Contract**

6     In Dr. Vahora's first cause of action for breach of an oral contact, Dr. Vahora alleges that Naeem

7  breached their partnership agreement by "failing to effectively run the day-to-day operations of VDL

8  and by refusing to recognize or honor Dr. Vahora's 60% ownership interest in VDL." Compl. ¶ 181. Dr.

9  Vahora contends that as a result of Naeem's breach, he "has been damaged in an amount exceeding

10  $500,000." *Id.* Defendants argue that the claim is barred by the statute of limitations. Doc. 8-1 at 15.

11     In this diversity case, California law provides the applicable statute of limitations. *Guaranty*

12  *Trust Co. of New York v. York*, 326 U.S. 99, 110 (1945). California Code of Civil Procedure § 339(1)

13  establishes a two-year limitations period for "[a]n action upon a contract, obligation or liability not

14  founded upon an instrument of writing." The parties agree that the statute of limitations for breach of an

15  oral contract is two years, but contest when the statute of limitations accrued.

16     Generally, under California law "[a] cause of action for a breach of an oral contract accrues at

17  the time of the breach, *i.e.*, when the party charged with the duty to perform under the contract fails to

18  perform." *Ahmadzai v. Metully*, No. CIVS-05-1091LKKJFMPS, 2005 WL 2219215, at *2 (E.D. Cal.

19  Sept. 12, 2005); *see Leibman v. Prupes*, No. 2:14–CV–09003–CAS (VBKx), 2015 WL 3823954, at *5

20  (C.D. Cal. June 18, 2015) ("In a suit to enforce an oral agreement, the statute of limitations in section

21  339(1) begins to run when the oral contract is repudiated.") (quoting *Parker v. Walker*, 5 Cal. App. 4th

22  1173, 1190 (1992)).

23     Defendants assert that the statute of limitations began to accrue no later than July 3, 2013,

24  because the actions constituting the alleged breach – Naeem's "failing to effectively run the day-to-day

25  operations of VDL and . . . refusing to recognize or honor Dr. Vahora's 60% ownership interest in

1    VDL" – occurred prior to that date. Compl. ¶ 181. Thus, Defendants argue, Dr. Vahora "knew or should

2    have known of the grounds of his cause of action" at that time. *Id.* at 15.

3           Dr. Vahora does not contest that Naeem breached the contract prior to July 3, 2013, and does not

4    deny knowledge of that fact. Instead, Dr. Vahora argues that because there existed ongoing contractual

5    obligations between the parties at the time of "Naeem's many breaches," Dr. Vahora was not required to

6    assert his claim for breach of an oral contract. Doc. 12 at 13. Dr. Vahora contends that the statute of

7    limitations did not begin to run until he elected to treat the oral contract as terminated, which occurred in

8    "the summer of 2016," well within the statute of limitations. *Id.* at 12-14.

9           Dr. Vahora filed this case on October 26, 2016. Thus, for Dr. Vahora's breach of oral contract

10   claim to be timely, it must have begun to accrue no earlier than October 26, 2014.

11          The parties agree that the first instance of any alleged conduct that constitutes a contractual

12   breach occurred in or before July 2013. Nonetheless, the rule of delayed commencement provides that

13   when a "defendant, obligated to perform over a period of time, is guilty of material breach, the plaintiff

14   may waive it and stand on the contract until the time for final performance," and "the statute [of

15   limitations] ought not to begin running until the date when the last performance is due." *Israelsky v.*

16   *Title Ins. Co.*, 212 Cal. App. 3d 611, 618 (1989); *see also Lambert v. Commonwealth Land Title Ins.*

17   *Co.*, 53 Cal. 3d 1072, 1078 (1991) ("California courts have long given the 'plaintiff, in cases where a

18   continuing duty has been breached, the option of filing suit when the time for complete performance has

19   passed.'"). The rule "is based largely on considerations of fairness to the nonbreaching [sic] party."

20   *Israelsky*, 212 Cal. App. 3d at 618. As the court in *Ross v. Tabor* explained:

21          The man who wrongfully renounces a contract into which he had deliberately entered
            cannot justly complain if he is immediately sued for a compensation in damages by the

22          man whom he has injured; and it seems reasonable to allow an option to the injured party,
            either to sue immediately or to wait till the time when the act was to be done, still holding

23          it as prospectively binding for the exercise of this option, which may be advantageous to
            the innocent party, and cannot be prejudicial to the wrongdoer.

24
     53 Cal. App. 605, 614 (1921) (internal quotation marks omitted).

25

As an example, in *Ross*, the plaintiff contracted for the defendant to care for a colony of bees over a period of three years. *Id.* at 606. Approximately six months after the contract was executed, the defendant breached the contract. *Id.* The trial court granted defendant's motion for nonsuit, in part, on the ground that the cause of action was barred by the statute of limitations. *Id.* at 606, 609. On appeal, the court held that the limitations period did not commence upon the initial breach of the contract, but rather when the time for complete performance had arrived. *Id.* at 613-15. It explained that "the contract was a continuing, executory contract,"[4] *id.* at 613, and as such,

> if [plaintiff] did not elect to abandon or rescind the contract when [defendant] ceased caring for the bees, [he] could wait until the expiration of the time when [defendant] was to complete his contract, and then bring his action, meanwhile holding the contract as prospectively binding for the exercise of his right to bring suit at the end of the term of service contemplated by the contract.

*Id.* at 614; *see also Union Sugar Co. v. Hollister Estate Co.*, 3 Cal. 2d 740, 745-46 (1935) ("Respondent was not bound to treat the contract as abandoned on the first breach of it or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until he had made his election.").

The rule of delayed commencement has been applied in the context of annual harvesting contracts, (*Union Sugar Co.*, 3 Cal. 2d at 740), water delivery contracts (*Richter v. Union Land etc. Co.*, 129 Cal. 367, 375 (1900); *Coulter v. Sausalito Bay Water Co.*, 122 Cal. App. 480, 490 (1932)), a commercial lease (*Worthington v. Kaiser Foundation Health Plan, Inc.*, 8 Cal. App. 3d 435, 442 (1970)), an agreement to pay life insurance premiums (*Lubin v. Lubin*, 144 Cal. App. 2d 781, 791 (1956)), the promise to levy taxes (*McGrath v. County of Butte*, 30 Cal. App. 2d 734, 736–39 (1939)), a settlement agreement to enjoin action (*Baugh v. Garl*, 137 Cal. App. 4th 737, 747 (2006)), and worker's compensation insurance contracts (*State Compensation Ins. Fund v. WallDesign Inc.*, 199 Cal. App. 4th 1525, 1530 (2011)). "Although the period between the initial breach by the respective defendants and

---

[4] California Civil Code § 1661 provides that "[a]n executed contract is one, the object of which is fully performed. All others are executory."

1    the time for performance in these cases ranged from a few days (*Worthington v. Kaiser Foundation*

2    *Health Plan, Inc.*) to 17 years (*Lubin v. Lubin* ), in each case the statute of limitations did not commence

3    until the time for complete performance had passed." *Israelsky*, 212 Cal. App. 3d at 618.

4        Dr. Vahora does not cite, and the Court cannot find, any case applying the rule of delayed

5    commencement to the breach of a partnership contract. Nevertheless, Dr. Vahora contends that the rule

6    should be applied to his oral partnership contract because the oral partnership contract was an "ongoing

7    performance contract." Doc. 12 at 14. He argues that he elected to rely upon the partnership agreement

8    after "the first of Naeem's many breaches" until the summer of 2016, "when the time arrived for

9    Naeem's complete performance." Doc. 12 at 13-14. Thus, "[b]ecause Dr. Vahora filed the instant

10   lawsuit in October 2016, less than two years after the time for complete performance," he avers, "Count

11   I for breach of oral contract is not time-barred." For support, Dr. Vahora cites to *Romano v. Rockwell*

12   *Int'l., Inc.*, 14 Cal. 4th 479, 489-90 (1996), *Trypucko v. Clark*, 142 Cal. App. 3d Supp. 1 (1983), and

13   *Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distribs. Of Evansville, LLC*, No. 10-00317-CW, 2010

14   WL 1957423, at *3 (N.D. Cal. May 14, 2010).

15       Before addressing Dr. Vahora's argument, the Court pauses to examine the contract here at issue.

16   Dr. Vahora alleges that he and Naeem entered into a partnership. Because the alleged oral partnership

17   contract was created after 1999, the California Revised Uniform Partnership Act ("CRUPA") applies to

18   it. *Corrales v. Corrales*, 198 Cal. App. 4th 221, 226 (2011) ("The [C]RUPA, adopted in 1996, applies to

19   all partnerships as of 1999."); Cal. Corp. Code § 16111(b). CRUPA defines a partnership as "an

20   association of two or more persons to carry on as coowners a business for profit." Cal. Corp. Code §

21   16101(9). A "[p]artnership at will" is one "in which the partners have not agreed to remain partners until

22   the expiration of a definite term or the completion of a particular undertaking." *Id.* § 16101(11).

23       The partnership agreement between Dr. Vahora and Naeem was entered into for the purpose of

24   running VDL and did not reference a date or event that would terminate that relationship. Thus, it

25   created a partnership at will. *See Glassell v. Prentiss*, 175 Cal. App. 2d 599, 605 (1959) (when an "oral

15

contract provide[s] for an association of the parties for the purpose of conducting a business without relation to any period of time," and the "association constitue[s] a partnership, it [is] a partnership at will.").

Section 16601, subdivision (1) allows dissociation upon "[t]he partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner." Cal. Corp. Code § 16601(1). "A partner has the power to dissociate at any time, rightfully or wrongfully, by express will pursuant to paragraph (1) of Section 16601." *Id.* § 16602(a). Partnership dissolution occurs "[i]n a partnership at will, by the express will to dissolve and wind up the partnership business of at least half of the partners, including partners . . . who have dissociated within the preceding 90 days, and for which purpose a dissociation under paragraph (1) of Section 16601 constitutes an expression of that partner's will to dissolve and wind up the partnership business." *Id.* § 16801(1). When there are only two members of a partnership and one member withdraws, then the partnership dissolves by operation of law. *See Corrales*, 198 Cal. App. 4th at 227.

When the allegation that "Naeem informed Dr. Vahora that he no longer wished to partner with Dr. Vahora in the ownership or management of VDL," Compl. ¶ 142, is read together with: Naeem's denial of Dr. Vahora's association with VDL to Flores, *id.* ¶ 138; Naeem's disregard of Dr. Vahora's managerial input regarding Flores's employment, *id.* ¶ 143-45; Dr. Vahora's "reaching out" to Najam "in search of a way to reach Naeem, to *wind down the partnership*, and to address management and ownership of VDL," *id.* ¶ 146 (emphasis added); Dr. Vahora's July 27, 2013 e-mail acknowledging that he had not yet received a written proposal from Naeem to *dissolve the partnership* and that if he did not receive one by August, he would "come to Madera and legally take over the lab," *id.* ¶ 147 (emphasis added); Naeem and Dr. Vahora's phone conversation wherein Naeem agreed to provide a written proposal for *liquidating the partnership*, *id.* ¶ 148 (emphasis added); and Naeem's offer to pay Dr. Vahora a "justifiable amount" for his contributions to VDL, *id.* ¶ 151, the only reasonable inference the Court can draw is that Naeem withdrew from the partnership. Accordingly, when Naeem withdraw from

1   the partnership, the partnership between Dr. Vahora and Naeem dissolved by operation of law. *See*

2   *Corrales*, 198 Cal. App. 4th at 227 ("by definition, a partnership must consist of at least two persons.").

3   "Dissolution, however, does not terminate the partnership which . . . continues until the winding

4   up of partnership affairs is completed." *King v. Stoddard*, 28 Cal. App. 3d 708, 711 (1972) (internal

5   quotation marks and citation omitted); Cal. Corp. Code § 16802(a). "In general a dissolution operates

6   only with respect to future transactions; as to everything past the partnership continues until all pre-

7   existing matters are terminated." *Cotton v. Perishable Air Conditioners*, 18 Cal. 2d 575, 577 (1941); *see*

8   Cal. Corp. Code § 16703(a) ("[a] partner's dissociation does not of itself discharge the partner's liability

9   for a partnership obligation incurred before dissociation."). Such pre-existing matters, or "unfinished

10  business," is determined by "look[ing] to the circumstances existing on the date of dissolution of the

11  partnership, not to events occurring thereafter." *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d

12  200, 217 (1983), *disapproved on other grounds as stated in Applied Equipment Corp. v. Litton Saudi*

13  *Arabia Ltd.*, 7 Cal. 4th 503, 521, fn. 10 (1994). "[The] test of what constitutes 'unfinished business' of a

14  partnership upon dissolution . . . is whether there existed, at the time of the dissolution, any contract of

15  employment between the partnership and the clients for the performance by the partnership of the

16  services thereafter claimed to be 'unfinished business.'" *Id.* (internal quotation marks and citation

17  omitted); *see Principal Mut. Life Ins. Co. v. Vars*, 65 Cal. App. 4th 1469, 1490 (1998) (a partnership

18  lease "which came into being before dissolution . . . was a matter in which all the partners had a

19  common interest and were under a common liability"). Furthermore:

20      Certain duties and obligations between partners end at dissolution, whereas other duties
        continue until the partnership business has been wound up. For example, a partner's duty
21      of loyalty "[t]o refrain from competing with the partnership in the conduct of the
        partnership business" ends at "the dissolution of the partnership." *Id.* § 16404(b)(3). By
22      contrast, a partner has a continuing duty of loyalty "[t]o account to the partnership and
        hold as trustee for it any property, profit, or benefit derived by the partner in the conduct
23      and winding up of the partnership business or derived from a use by the partner of
        partnership property or information, including the appropriation of a partnership
24      opportunity." *Id.* § 16404(b)(1). A partner's duty of care similarly persists through the
        "winding up of the partnership business." *Id.* § 16404(c).

25

17

*Second Measure Inc. v. Kim*, 145 F. Supp. 3d 961, 975 (N.D. Cal. 2015).

While the facts in the Complaint indicate that the partnership between Naeem and Dr. Vahora <u>dissolved</u> in July 2013 when Naeem informed Dr. Vahora that he no longer wished to partner with Dr. Vahora in the ownership or management of VDL, the Complaint does not contain sufficient facts to enable the Court to determine when the partnership between Dr. Vahora and Naeem <u>terminated</u>. After the July 2013 dissolution, their partnership "continue[d] until the winding up of partnership affairs [wa]s completed." *King*, 28 Cal. App. 3d at 711. Dr. Vahora alleges Naeem converted Dr. Vahora's interest in the partnership (*i.e.*, Dr. Vahora's interest in partnership property and partnership profits) after the dissolution. Assuming this conversion actually happened, which the Court must do for purposes of this motion, this would have terminated Dr. Vahora's interest in that property at the time of the conversion. If no other partnership affairs remained to be wound up, the conversion might have constituted "termination" of the partnership and therefore accrual of the statute of limitations. However, this is not a reasonable presumption. The partnership would still continue with respect to any obligations to third-parties. *Asbestos Mfg. & Supply Co. v. Lennig-Rapple Engineering Co.*, 26 Cal. App 177, 182 (1914) ("[t]he dissolution of a partnership by the withdrawal of a member will not affect its liability upon contracts made while he was a member, unless such member is relieved from liability by some act of the person dealing with the firm."). Accordingly, in order to identify how long Dr. Vahora's and Naeem's partnership continued, it is necessary to determine what "unfinished business" the partnership had at the time of its dissolution. *Rosenfeld, Meyer & Susman*, 146 Cal. App. 3d at 219-220. Critically, Dr. Vahora alleges that VDL had employees and a lease for its premises, which would constitute unfinished business if an employee contract or the lease did not terminate until after July, 2013, when the partnership dissolved. *See Vars*, 65 Cal. App. 4th at 1490 (1998) (partnership obligations that came into being before dissolution are unfinished business). So would contracts of employment of VDL by third-parties. *See Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d at 217. Because the Court does not know what partnership obligations existed at the time of dissolution, it cannot determine when the

1  partnership's unfinished business terminated. *See* Cal. Corp. Code § 16802(a) ("The partnership is

2  terminated when the winding up of its business is completed.") It is within this context that the Court

3  analyzes Dr. Vahora's argument.

4      The first case Dr. Vahora cites is *Romano*, which is wholly inapplicable to this case. Simply put,

5  while *Romano* discussed the rule of delayed commencement, it did not apply the doctrine. 14 Cal. 4th at

6  489-90.

7      Dr. Vahora's next two cases are more compelling. *Trypucko* concerned an action brought by a

8  former tenant against her former landlord for wrongfully withholding her security deposit. 142 Cal. App.

9  3d Supp. at 2-3. The parties "entered into a written lease for an original term of five years with an option

10  to renew for an additional five years covering commercial property owned by defendant." *Id.* at 3. Two

11  years later, the defendant transferred the property subject to the lease to a third-party and unlawfully

12  retained the security deposit. *Id.* The plaintiff subsequently renewed the lease for an additional five

13  years, according to its terms. *Id.* Upon expiration of the lease, plaintiff demanded return of her security

14  deposit. *Id.* On appeal, the court confirmed the trial court's ruling that the statute of limitations began to

15  run upon the expiration of the lease. *Id.* at 7. Citing *Union Sugar Co.*, the court explained that the lease

16  "constituted a continuing contract involving the rendering of benefits to the plaintiff before the date for

17  final performance, the lease expiration date." *Id.* Accordingly, the "[p]laintiff was not obligated to treat

18  the failure of defendant to perform when he transferred the subject property to [a third-party] as a final

19  breach." *Id.* at 6-7.

20      *Dreyer's Grand* addressed when the statute of limitations began to accrue for non-payment under

21  an ongoing credit agreement – at the time of each individual breach (non-payment) or upon breach of

22  the final invoice. 2010 WL 1957423, at *2-3. Dreyer's Grand Ice Cream, Inc. (Dreyer's) entered into a

23  distribution agreement with Ice Cream Distributors of Evansville, LLC (ICD). *Id.* at *1. ICD

24  subsequently applied for and obtained a line of a credit with Dreyer's. *Id.* The credit account did not

25  have an expiration date and required payment within ten days from the date of any invoice. *Id.* "Over the

1  period that [ICD] distributed [Dreyer's] products, they accrued a balance of $233,081.21," which is "the

2  sum of amounts due on multiple invoices" *Id.* at *1-2. However, only one invoice fell within the

3  limitations period. *Id.* at *2.

4        When ICD failed to pay the final invoice, Dreyer's filed a complaint claiming damages for the

5  entire amount owed by ICD. *Id.* at *1-2. The court held that the statute of limitations for *all* non-

6  payments did not begin to accrue until payment was due on the final invoice. *Id.* at *3. Citing *Romano*,

7  the court explained:

8
9        despite ICD's non-payment, Plaintiff apparently chose to continue extending credit to
         ICD under the agreement until January 29, 2006. In doing so, as in *Romano*, Plaintiff
10       gave ICD the opportunity to cure its earlier defaults on its obligation to pay, while both
         ICD and Plaintiff treated the contract as in effect. *See Boon Rawd Trading Int'l Co., Ltd.*
         *V. Paleewong Trading Co., Inc.*, --- F. Supp. 2d ---, 2010 WL 668063, at *6 (N.D. Cal.)
11       (discussing *Romano*). When ICD failed to pay the final bill, Plaintiff then elected to treat
         the breach as terminating the credit agreement. Under *Romano*, Plaintiff was entitled to
12       wait until January 29, 2006 to do so.

13  *Dreyer's Grand*, 2010 WL 1957423, at *3.

14        The Court agrees with Dr. Vahora that the rule of delayed commencement applies to the oral

15  partnership agreement. The partnership agreement was an executory contract that required future

16  performance from Naeem and Dr. Vahora: Naeem was to run the day-to-day operations, Dr. Vahora was

17  to assist in management, and both parties were to share in profits. *See Ross*, 53 Cal. App. at 614 (when

18  there is a continuing executory contract, a plaintiff may ignore the defendant's breach of contract until

19  the time for complete performance). Furthermore, CRUPA applied affirmative duties upon both Dr.

20  Vahora and Naeem that did not extinguish until partnership <u>termination</u>, rather than partnership

21  dissolution. Thus, the partnership agreement "constituted a continuing contract involving the rendering

22  of benefits to the [partners] before the date for final performance." *Trypucko*, 142 Cal. App. 3d at 7.

23  Although the partnership agreement created a partnership at will without a set time for final

24  performance, indefinite terms as to duration do not bar the rule's application. *Dreyer's Grand Ice*

25  *Cream, Inc.*, 2010 WL 1957423, at *3. For instance, *Dreyer's Grand* applied the rule to an open credit

account, which is similar in duration and terminability to Dr. Vahora's and Naeem's partnership at will. *See id.* at *1. Accordingly, under the rule of delayed commencement, Naeem's breaches for failing to run the day-to-day operations of VDL and for denying Dr. Vahora's partnership interest did not begin to accrue until the time for final performance under the oral contract.

The sole remaining issue is when the time for final performance was due. In *Trypucko* and *Dreyer's Grand*, the time for complete performance was due when the contracts terminated. *See Trypucko*, 142 Cal. App. 3d at 7; *Dreyer's Grand*, 2010 WL 1957423, at *3. As previously discussed, all fiduciary and affirmative duties for partners cease upon partnership termination. The Court therefore finds that the partnership equivalent of the "time for complete performance" is the partnership's termination.

As mentioned, the Court cannot determine the date upon which Dr. Vahora's and Naeem's partnership terminated, *i.e.*, when all of the pre-existing partnership contractual obligations at the time of dissolution expired or were resolved, from the face of the Complaint. "A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred." *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). The rule of delayed commencement provides that the statute of limitations does not *accrue* until the time for complete performance (the partnership equivalent being the partnership's termination). *Union Sugar Co.*, 3 Cal. 2d at 745-46. Defendants have failed to show that the statute of limitations began to accrue prior to October 26, 2014, thus, they have failed to meet their burden to prove Dr. Vahora's claim is time barred. Accordingly, Defendants' motion to dismiss the claim is DENIED

### 2.     Breach of the Implied Duty of Good Faith and Fair Dealing

Dr. Vahora's second cause of action is for breach of the implied covenant of good faith and fair dealing. Dr. Vahora contends that Naeem breached the implied covenant by "mismanaging VDL, firing Flores and denying Dr. Vahora's ownership interest in VDL, among other bad acts." Compl. ¶ 189. Dr. Vahora asserts that as a result of Naeem's breach, "Dr. Vahora has been damaged in an amount

1 exceeding $500,000." *Id.* ¶ 190. Dr. Vahora requests compensatory damages together with punitive

2 damages. *Id.*

3      Defendants argue that Dr. Vahora's claim is barred by the statute of limitations. Doc. 8-1 at 16.

4 Defendants contend that the applicable statute of limitations is two years because the implied covenant

5 of good faith and fair dealing is based on an oral contract and that the actions constituting breach

6 occurred prior to July 3, 2013.  *Id.* at 15. Defendants assert that because Dr. Vahora "knew or should

7 have known" of the actions constituting breach at that time, the cause of action is barred by the statute of

8 limitations. *Id.* at 16. Defendants also argue that punitive damages are not available for breach of the

9 implied covenant of good faith and fair dealing. *Id.*, n. 2.

10      Dr. Vahora counters that the claim is timely. Doc. 12 at 15. He contends that he "learned of

11 Naeem's breach of his duty of good faith and fair dealing in the summer of 2016." *Id.* Dr. Vahora argues

12 that because he filed this case in fall of 2016, his cause of action is not barred by the two-year statute of

13 limitations. In the alternative, Dr. Vahora argues that "Claim II is not invoked pursuant to Naeem's

14 duties under the oral contract agreement cited in Count I, but rather arises under the obligations set forth

15 in the written agreement – an April 17, 2012 writing by Naeem which evidences and confirms the terms

16 of the partnership." *Id.* Thus, Dr. Vahora avers a four-year statute of limitations attaches to Count II. *Id.*

17      "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for

18 breach of contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th

19 1306, 1344  (2009). "There is an implied covenant of good faith and fair dealing in every contract that

20 neither party will do anything which will injure the right of the other to receive the benefits of the

21 agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000). The

22 implied covenant is "as much a part of the instrument as if [the covenant] were written out." *Comunale*

23 *v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 662 (1958).

24      As previously noted, California Code of Civil Procedure § 339(1) provides a two-year limitations

25 period for oral contracts and § 337(1) establishes a four-year limitations period for "an action upon any

22

1   contract, obligation or liability founded upon an instrument in writing."

2   In his Opposition, Dr. Vahora attempts to reframe his claim for breach of the implied covenant of

3   good faith and fair dealing from arising out of an oral contract to one arising out of the April 17, 2012

4   writing. However, a review of the Complaint shows that this characterization is contrary to the

5   allegations of the underlying claim. In his Complaint, Dr. Vahora states, "[i]mplicit in the *oral*

6   agreement is the duty inherent upon both parties to refrain from doing anything which denies the other

7   party the fruits of that contract," and that "Naeem breached *that* duty . . ." Compl. ¶¶ 188-89 (emphasis

8   added). Accordingly, Dr. Vahora's claim is based upon the oral contract and the applicable statute of

9   limitations is two years. *See* Cal. Code Civ. Proc. § 339(1).

10   Defendants argue that the statute of limitations began to accrue on July 3, 2013, because

11   Naeem's "firing [of] Flores, not running VDL in comportment with the original agreement and not

12   recognizing [Dr. Vahora's] 60% ownership interest" occurred prior that date. Doc. 8-1 at 15. In his

13   Opposition, Dr. Vahora admits that Flores was fired in July 2013. Doc. 12 at 14. However, Dr. Vahora

14   contends that he did not learn of Naeem's intent to "permanently and irrevocably" deny him of his

15   ownership interest until the summer of 2016. *Id.* This is not the correct standard. Breach of the implied

16   covenant of good faith and fair dealing occurred when Naeem's actions injured Dr. Vahora's right to

17   receive the benefits of their agreement. *See Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.

18   4th 390, 400 (2000). Insofar as Dr. Vahora argues that he did not learn of Naeem's denial of Dr.

19   Vahora's partnership interest until 2016, while Dr. Vahora does not explicitly state it in his Opposition,

20   this assertion implicates the so-called discovery rule, which would arguably postpone accrual of the

21   statute of limitations for any breach based upon this denial of the partnership until the time of Dr.

22   Vahora's discovery in 2016.

23   A cause of action accrues at "the time when the cause of action is complete with all of its

24   elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). An exception to this rule of accrual,

25   however, is the "discovery rule," which postpones accrual until the plaintiff discovers, or has reason to

1   discover, the facts underlying the cause of action. *Id.* "[T]he plaintiff discovers the cause of action when

2   he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks

3   knowledge thereof — when, simply put, he at least suspects [ ] that someone has done something wrong

4   to him, wrong being used, not in any technical sense, but rather in accordance with its lay

5   understanding." *Id.* at 397–98 (internal quotation marks and citation omitted). "[S]uspicion of one or

6   more of the elements of a cause of action, coupled with knowledge of any remaining elements, will

7   generally trigger the statute of limitations period." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797,

8   807 (2005). The discovery rule "allows accrual of the cause of action even if the plaintiff does not have

9   reason to suspect the defendant's identity" because "the identity of the defendant is not an element of a

10  cause of action." *Id.* Thus, "[t]he discovery rule only delays accrual until the plaintiff has, or should

11  have, inquiry notice of the cause of action." *Id.*

12      The discovery rule does not save Dr. Vahora's claim because he had knowledge of, or at least

13  suspected, Naeem was acting in a manner that threatened to deny Dr Vahora the fruits of their contract

14  August 2013. In his complaint, Dr. Vahora alleges that Naeem was mismanaging VDL as early as

15  December 2012 when Dr. Vahora was forced to take a more active role in the day-to-day operations

16  because VDL was in a state of managerial disarray and fiscal crisis. *See* Compl. ¶¶ 90, 92-93.

17  Furthermore, Dr. Vahora alleges Naeem's mismanagement created a dire financial situation by June

18  2013, which caused Dr. Vahora to seek a replacement for Naeem's position. *See id.* ¶¶ 135-36. These

19  allegations display actual knowledge of the wrongful act: Naeem's mismanagement of VDL. Because

20  Dr. Vahora alleges that the mismanagement of VDL by Naeem injured his right to receive benefits of

21  the agreement, knowledge of Naeem's mismanagement constitutes knowledge of the breach of the

22  implied covenant of good faith and fair dealing.

23      In regard to Flores's termination, Dr. Vahora's allegations also display knowledge of Naeem's

24  actions when they occurred. Dr. Vahora attached to his Complaint an email he received from Flores on

25  July 8, 2013, wherein Flores informed Dr. Vahora that Naeem fired him. *See id.*, Ex. 37 at 2-3. Dr.

1   Vahora even attached copies of emails *he* sent to Naeem on July 10, 12, 16, 18, and 21, 2013, discussing

2   Flores's termination. *See id.*, Ex. 37 at 1; *Id.*, Ex. 38. Dr. Vahora alleges that Naeem's termination of

3   Flores's employment injured his right to receive the benenfits of the agreement. Thus, Dr. Vahora's

4   knowledge of Flores's termination means that he had knowledge of Naeem's breach of the implied

5   covenant of good faith and fair dealing. With respect to Naeem's denial of Dr. Vahora's partnership

6   interest, Dr. Vahora states in an email sent on July 26, 2013 that Naeem threatened to blackmail him,

7   threatened to close down VDL and enter into bankruptcy, and conspired with others in effort to "throw

8   [Dr. Vahora] out" and keep all the benefits of the partnership for himself. *Id.*, Ex. 39 at 3. These

9   allegations show that Dr. Vahora suspected wrongdoing – Naeem attempting to deny Dr. Vahora the

10  benefits of the partnership after its dissolution – as early as July 26, 2013. *See Jolly v. Eli Lilly & Co.*, 44

11  Cal. 3d 1103, 1110-11 (1988) ("the limitations period begins once the plaintiff 'has notice or

12  information of circumstances to put a reasonable person on inquiry.'"). Dr. Vahora certainly had notice

13  of circumstances that would put a reasonable person on inquiry by August 1, 2013, when, after Dr.

14  Vahora suspected Naeem was trying to "throw him out," Naeem failed to provide a written proposal for

15  dissolution as demanded by Dr. Vahora and ceased all further contact with him. Again, because Dr.

16  Vahora suspected wrongdoing of the act which he argues injured his right to receive the benefits of the

17  agreement, he had notice of the breach of the implied covenant of good faith and fair dealing.

18  Accordingly, because Dr. Vahora had actual knowledge of, and suspected, wrongdoing as early as

19  August 1, 2013, the statute of limitations began to accrue at that time.

20      Moreover, Dr. Vahora's argument that he did not discover Naeem's intent to permanently

21  deprive him of his interest in VDL until summer of 2016 is contradicted by the express allegations in the

22  Complaint – namely, that Naeem was trying to throw him out of the business in July 2013. If in July

23  2013 Dr. Vahora was so concerned about Naeem's actions that he announced he would take legal action

24  if Naeem did not change his behavior and comply with his demands, he had "a suspicion of wrongdoing,

25  and therefore an incentive to sue" as soon in August 2013. *Jolly*, 44 Cal. 3d at 1111. "So long as a

1   suspicion exists, it is clear that the plaintiff must go find the facts; [ ]he cannot wait for the facts to find

2   h[im]." *Id.*; *Fox*, 35 Cal. 4th at 808 ("[i]n order to employ the discovery rule to delay accrual of a cause

3   of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a

4   reasonable investigation of all potential causes of that injury.").

5       Thus, Dr. Vahora's claim began to accrue on August 1, 2013. Because he filed the current action

6   more than two years later, it is barred by the statute of limitations. Therefore, Defendants' motion to

7   dismiss Dr. Vahora's claim for breach of the implied covenant of good faith and fair dealing is

8   GRANTED without leave to amend.[5]

9       **3.   Unjust Enrichment**

10      Dr. Vahora's third cause of action is for unjust enrichment. Without addressing Defendants'

11   argument that Dr. Vahora's cause of action for unjust enrichment is barred by the applicable statute of

12   limitations, the Court *sua sponte* dismisses, without leave to amend, Dr. Vahora's claim for unjust

13   enrichment for failure to state a claim for the reasons described below.

14      Pursuant to Rule 12(b)(6), a court may dismiss a claim *sua sponte* for failure to state a claim

15   when the plaintiff  "cannot possibly win relief." *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 991 (9th

16   Cir. 1987) (citing *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981)). Although in general "the [trial]

17   court must give notice of its *sua sponte* intention to invoke Rule 12(b)(6) and afford plaintiffs an

18   opportunity to at least submit a written memorandum in opposition to such motion," *Wong*, 642 F.2d at

19   361-62 (internal quotations omitted), "a dismissal may be made without notice where the claimant

20   cannot possibly win relief." *Omar*, 813 F.2d at 991; *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d

21   635, 638 (9th Cir. 1988) (same).

22      Many California courts have made clear that unjust enrichment is not an independent cause of

23

24   _____

25   [5] Because the Court grants Defendants' motion to dismiss Dr. Vahora's claim for breach of the implied covenant of good faith and fair dealing, Defendants' request to strike Dr. Vahora's request for punitive damages is moot. Accordingly, the Court does not consider it.

1  action. *See, e.g.*, *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is

2  not a cause of action.... Rather, it is a general principle underlying various doctrines and remedies,

3  including quasi-contract.") (internal citation omitted); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387

4  (2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general

5  principle, underlying various legal doctrines and remedies.") (internal quotations marks and citations

6  omitted); *Yates v. Aurora Loan Servs., LLC*, No. C–11–00695 EDL, 2011 WL 2429376, at *9 (N.D. Cal.

7  June 13, 2011) (citing *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003))

8  ("There is no claim for unjust enrichment in California, rather it is an equitable remedy.").

9         Accordingly, because Dr. Vahora has pled an uncognizable claim, *see Jogani*, 165 Cal. App. 4th

10  at 911, the Court DISMISSES without leave to amend Dr. Vahora's claim for unjust enrichment.

11         **4.      Promissory Estoppel**

12         As an alternative to his breach of oral contract theory, Dr. Vahora's fourth cause of action is for

13  promissory estoppel. Dr. Vahora argues that Naeem promised to partner with Dr. Vahora for the purpose

14  of purchasing and running VDL, that Dr. Vahora foreseeably and reasonably relied upon that promise,

15  and, as a result, Dr. Vahora "has been damaged in an amount exceeding $500,000." Compl. ¶¶ 205-11.

16         Defendants contend that Dr. Vahora's claim is barred by the statute of limitations. Doc. 8-1 at

17  17. Defendants argue that Naeem breached the agreement "in July and August of 2013 when [Naeem]

18  refused to acknowledge [Dr. Vahora's] ownership interest and cut [Dr. Vahora] out of the business." *Id*.

19  Because these actions took place "more than two years prior to the filing of the present complaint," and

20  the applicable statute of limitations is two years for an obligation not founded upon a writing, they aver,

21  "this cause of action is barred by the statute of limitations." *Id*.

22         In his Opposition, Dr. Vahora counters that his cause of action for promissory estoppel is timely.

23  Doc. 12 at 18.  He contends that the applicable statute of limitations is three years, not two, because

24  Naeem's breach had the "consequence and legal effect of actual fraud." *Id*. Dr. Vahora argues that since

25  the underlying claim is based on fraud, the fraud statute of limitations of three years controls. *Id.* Dr.

1   Vahora further argues that the discovery rule delayed accrual of the statute of limitations until December

2   of 2013. *Id.* He contends that the he did not have a basis for discovering Naeem's breach until the Flores

3   lawsuit in December 2013, which is within the three year limitations period. *Id.*

4        "The statute of limitations for promissory estoppel based on oral promises is two years."

5   *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal. App. 5th 1207, 1224

6   (2016). For "[a]n action for relief on the ground of fraud or mistake," the limitations period is three

7   years. Cal. Code of Civ. Proc. § 338(d).

8        The Court need not decide which of the two statutes of limitations apply because under either

9   limitations period, Dr. Vahora's claim for promissory estoppel is not timely. As previously discussed

10  during the Court's analysis of Dr. Vahora's second cause of action as it pertains to Naeem's refusal to

11  honor Dr. Vahora's partnership interest, Dr. Vahora had actual knowledge, or suspicion, of wrongdoing

12  that Naeem breached the partnership agreement by August 1, 2013. *See Jolly*, 44 Cal. 3d at 1110-11

13  ("the limitations period begins once the plaintiff 'has notice or information of circumstances to put a

14  reasonable person on inquiry.'"). He filed the underlying action on October 26, 2016, more than three

15  years later. Thus, Dr. Vahora's claim for promissory estoppel is barred by the statute of limitations.

16       Dr. Vahora's argument that he did not have a reasonable basis to conduct an investigation into

17  Naeem's refusal to acknowledge or repay Dr. Vahora for his ownership interest in VDL until December

18  2013 does not save his claim. This bare assertion contradicts the allegations in the Complaint in the

19  same manner as Dr. Vahora's argument that he did not discover Naeem's intent to deprive him

20  permanently of his interest in VDL until the summer of 2016. Dr. Vahora knew Naeem was trying to

21  throw him out of the business in July of 2013 and threatened litigation if Naeem did not comply with Dr.

22  Vahora's directions by August 1, 2013. He suspected wrongdoing which gave him the "incentive to sue"

23  as soon as his claim accrued in August 2013. *Jolly*, 44 Cal. 3d at 1111. Accordingly, Defendants' motion

24  to dismiss Dr. Vahora's claim for promissory estoppel is GRANTED without leave to amend.

25      **5.**    **Violation of California's Unfair Competition Law**

1    In Dr. Vahora's fifth cause of action for violations of the UCL, Dr. Vahora argues that Naeem,

2    VDL, Najam, and Dr. Masood all violated the UCL for essentially the same underlying reasons

3    articulated in his breach of contract and intentional misrepresentation claims: that Dr. Masood and

4    Najam both falsely represented Naeem's capabilities and investment risk; that Naeem and VDL refused

5    to acknowledge Dr. Vahora's partnership interest or repay him for his contributions; and that Naeem

6    diluted his partnership interest and fired Flores without authorization. Compl. ¶¶ 218-221.

7    Defendants assert that Dr. Vahora has not pled a cause of action under the UCL because (1) the

8    UCL was intended to protect consumers and competitors and (2) Dr. Vahora was not a competitor or

9    consumer of Defendants. Doc. 8-1 at 19.

10    The UCL was enacted "to protect both consumers and competitors by promoting fair competition

11    in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). The

12    statute establishes three varieties of unfair competition: "unlawful, unfair, or fraudulent" business acts

13    and practices. Cal. Bus. & Prof. Code § 17200. "[T]he central issue presented under [the UCL] is

14    whether the public at large, or consumers generally, are affected by the alleged ... business practice of

15    defendants." *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998–99 (N.D. Cal. 2010). Thus, a UCL

16    claim fails if it lacks any connection to the protection of fair competition or the general public. *Id.* at

17    999; *see also Dillon v. NBCUniversal Media LLC*, No. CV 12–09728 SJO (AJWx), 2013 WL 3581938,

18    at *7 (C.D. Cal. June 18, 2013) ("[D]ismissal of UCL actions is appropriate when the plaintiff is neither

19    a competitor nor a consumer."); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115,

20    135 (2007) (a claim alleging violations of the UCL is subject to dismissal if "the alleged victims are

21    neither competitors nor powerless, unwary consumers").

22    Here, Dr. Vahora's UCL claim arises out of his business and personal relationships with

23    Defendants and does not appear to affect the public in general or any individual consumers who were

24    harmed by Defendants' alleged practices. The Complaint is also devoid of any allegations that

25    Defendants are Dr. Vahora's competitors or that Defendants' alleged practices had a negative effect on

competition. The only injury alleged in Dr. Vahora's fifth cause of action is loss of Dr. Vahora's

personal investment in VDL (both services and contributions). Nothing in the Complaint suggests that

individual consumers or the public at large were harmed as a result of Defendants' wrongdoing.

Accordingly, because Dr. Vahora is "neither [a] competitor[,] nor [a] powerless, unwary consumer[,]"

he has not stated a claim under the UCL. *Linear Tech. Corp.*, 152 Cal. App. 4th at 135. Defendants

motion to dismiss Dr. Vahora's claim for violations of the UCL is GRANTED without leave to amend.

### 6.  Civil Conspiracy to Commit Fraudulent Deceit

Dr. Vahora's sixth cause of action is for civil conspiracy to commit fraudulent deceit. Compl. ¶¶

223-34. Dr. Vahora alleges that Naeem falsely represented or suppressed information that: "[Naeem]

was capable of managing a medical testing facility on a day-to-day basis; that he was willing to pay

$100,000 toward a 50/50 ownership in VDL; that he would fund half of the purchase price of VDL; that

his salary was unilaterally adjusted from $3,000 to $5,000; that he diluted and sold a portion of his

interest in VDL; that he intended to honor the contract with Dr. Vahora; that he was competently and

honestly managing VDL's finances, human resources, supplier contracts and customer relations; that he

had the authority to unilaterally fire Flores; that he was legally entitled and empowered to provide

himself a loan from Dr. Vahora which VDL was obligated to repay; that he was not obligated to repay

Dr. Vahora's funding (in excess of $380,000) of VDL's operating expenses, with interest; that Dr.

Vahora was not entitled to a 60 percent ownership interest in VDL; that Dr. Vahora was not entitled to

share in VDL's ultimate profits; and that Dr. Vahora was not entitled to recompense of his $120,000

original ownership investment in VDL, with interest." *Id.* ¶ 229. Dr. Vahora also alleges that Najam and

Dr. Masood falsely represented or suppressed information that: "Naeem was capable of running the day-

to-day operations of a medical testing facility"; "Naeem could afford to pay $100,000 toward a 50/50

partnership in VDL"; and "a partnership with Naeem was a good investment risk."*Id.* ¶¶ 230-31.

Defendants contend that Dr. Vahora's claim is barred by the statute of limitations. Doc 8-1 at 19.

"[C]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who,

1  although not actually committing a tort themselves, share with the immediate tortfeasors a common plan

2  or design in its perpetration." *I-CA Enterprises, Inc. v. Palram Americas, Inc.*, 235 Cal. App. 4th 257,

3  271 (2015) (internal quotation marks and citation omitted). "In an action based on civil conspiracy, the

4  applicable statute of limitations is determined by the nature of the action in which the conspiracy is

5  alleged." *Maheu v. CBS*, 201 Cal. App. 3d 662, 673 (1988).

6      The parties agree that the three-year limitations period for fraud applies. Cal. Code of Civ. Proc.

7  § 338(d). However, they disagree over when the statute of limitations began to accrue.

8      Defendants assert that because Dr. Vahora knew of the alleged fraud and deceit prior to

9  September 2013, his claim is untimely. Doc. 8-1 at 19.

10     Dr. Vahora claims, without any meaningful explanation, that the discovery rule prevented the

11  statute of limitations from accruing until after December 2013. [6] Doc. 12 at 19. Dr. Vahora also argues

12  that Defendants have failed to establish Dr. Vahora's "knowledge of any of their . . . frauds and deceits

13  prior to October 2013." *Id.*

14     As explained above, Dr. Vahora's claim began to accrue by August of 2013 because he had

15  actual knowledge, or suspicion, of the misrepresentations at that time. *Norgart v. Upjohn Co.*, 21 Cal.

16  4th 383, 397 (1999) ( "[T]he plaintiff discovers the cause of action when he at least suspects a factual

17  basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof."). The Court

18  found in Dr. Vahora's second cause of action that Dr. Vahora had actual knowledge or suspicion or

19  wrongdoing with respect to Naeem's mismanaging VDL, firing Flores and denying Dr. Vahora's

20  ownership interest in VDL. Thus, any statements or suppressed facts to the contrary were known by

21  August 1, 2013. Further, Dr. Vahora alleges that when he and Naeem purchased VDL in July 2012, he

22

23  ───────────────

[6] In his Opposition, Dr. Vahora provides argument based on Dr. Vahora's attached affidavit in support thereof. However, as
24  the Court has excluded the affidavit, it ignores the relevant portions of Dr. Vahora's argument. *Stemplewski*, 2010 WL
2179152, at *2 (refusing to acknowledge new information provided in the plaintiff's opposition to a motion to dismiss).
Further, the Court notes that there is nothing in the Complaint to explain why or how Dr. Vahora came to the conclusion that
25  he had been defrauded after December 2013. Indeed, the most recent event identified by the Complaint is the Flores lawsuit
in December 2013.

1   had to contribute an extra $20,000 because Naeem could only contribute $80,000, *see* Compl. ¶¶ 58-59,

2   which shows knowledge of the false representations that Naeem could contribute $100,000.  Dr.

3   Vahora's knowledge of Naeem's mismanagement, taken together with Naeem's inability to contribute to

4   the operating capital and overhead expenditures of VDL, *see id.* ¶ 75, and Dr. Vahora's suspicion that

5   Naeem was going to "throw him out" of VDL, provided sufficient notice that any statement that Naeem

6   was a good financial investment was false. Dr. Vahora's accusation that Naeem wanted throw him out to

7   "get all the benefits and share it with [Naeem's] co-conspirator" in his July 26, 2013 email shows he

8   suspected that Naeem was going to share the profits of VDL with someone else, which provided

9   sufficient notice that Naeem possibly "diluted or sold" his partnership interest. *See id.*, Ex. 39 at 3. The

10  remaining false representations or suppressed facts pertain to Naeem's salary adjustment and a loan

11  Naeem took out from VDL. However, both of these facts were known to Dr. Saeed prior to August 1,

12  2013, as evidenced by Dr. Vahora's acknowledgement of the loan in the Complaint, *see id.* ¶ 79, and his

13  taking over payment of expenses for VDL in spring of 2013. *Id.*, Ex. 41 at 2; *See also id.*, Ex. 39 at 3

14  (acknowledging Naeem has been paid $60,000 over last year, which is a salary of $5,000/month).

15  Accordingly, Dr. Vahora's claim for civil conspiracy to commit fraudulent deceit began to accrue on

16  August 1, 2013.

17      Because the statute of limitations accrued before October 26, 2013 (three years prior to the filing

18  of the Complaint), Dr. Vahora's claim is barred by the statute of limitations. Accordingly, Defendants'

19  motion to dismiss Dr. Vahora's claim for civil conspiracy to commit fraudulent deceit is GRANTED

20  without leave to amend.

21      **7.   Intentional Misrepresentation**

22      In his seventh cause of action for intentional misrepresentation, Dr. Vahora argues that "Naeem,

23  Najam and Dr. Masood knowingly misrepresented to Dr. Vahora that Naeem was capable of running the

24  day-to-day operations of a medical testing facility; that Naeem would contribute $100,000 toward the

25  purchase of VDL; and that a partnership in VDL with Naeem was a good investment." Compl. ¶ 237.

1    Dr. Vahora's claim for intentional misrepresentation is entirely duplicative of his claim for fraud.

2    Moreover, the statute of limitations for an intentional misrepresentation cause of action in California is

3    three years. *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997). Cal. Code of Civ. Proc.

4    § 338(d). For the same reasons set forth in the preceding section, the claim is untimely. Defendants'

5    motion to dismiss Dr. Vahora's claim for intentional misrepresentation is GRANTED without leave to

6    amend.

7        **8.    Conversion**

8        Dr. Vahora's eighth cause of action is for conversion. Compl. ¶¶ 242-253. Dr. Vahora alleges

9    that Naeem converted the operational control of VDL, VDL's profits, the value of Dr. Vahora's

10   partnership interest, and the $380,000 Dr. Vahora infused into VDL for operational expenses. *Id.* ¶¶

11   244-50.

12       Under  California law, "[c]onversion is the wrongful exercise of dominion over the property of

13   another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *Oakdale Vill.*

14   *Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996)). "The elements of a conversion claim are (1) the

15   plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the

16   defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* A

17   partner can be liable for conversion of partnership property, even though the converting partner has an

18   immediate right to possession and control. *Oakdale Vill. Group*, 43 Cal. App. 4th at 539. Further,

19   intangible property that is of a determinable value, such as corporate shares and bonds, may be the

20   proper subject of a conversion claim. *See Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage*

21   *Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996) (collecting California cases). "However, more abstract

22   intangible property, such as business goodwill and business strategies are not proper subjects of

23   conversion." *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 981 (2015). In addition, "[a] specific

24   and identified amount of money can form the basis of a conversion claim, but when the money is not

25   identified and not specific, the action is to be considered as one upon contract or for debt and not for

1    conversion." *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008) (internal

2    quotation marks omitted). Moreover, the exchange of funds that forms a relationship of creditor and

3    debtor is also unrecoverable in tort. *Metropolitan Life Ins. Co. v. San Francisco Bank*, 58 Cal. App. 2d

4    528, 533-34 (1943) (because title of funds transferred to debtor passed when plaintiff deposited funds in

5    bank, plaintiff "was no longer the owner or entitled to the possession of any specific money which was

6    the subject of conversion.").

7            Defendants assert that Dr. Vahora has failed to state a claim upon which relief can be granted.

8    Doc. 8-1 at 21. Specifically, Defendants argue that Dr. Vahora's claim for conversion is insufficient

9    because operational control is not specific chattel subject to conversion. *Id*. Defendants also argue that

10   the claim fails because Dr. Vahora did not have a right to operational control of VDL because Naeem

11   was responsible for its day-to-day operations. *Id.* Dr. Vahora does not contest Defendants' argument.

12   Doc. 12 at 22-23.

13           At least one court has found that a partnership interest is property that is subject to conversion.

14   *Second Measure, Inc.*, 143 F. Supp. 3d at 981. *Second Measure* involved a co-partnership formed for the

15   purpose of establishing and running a data analyzing business. *Id.* at 964. After one partner shut the

16   other out from the business, both parties filed actions against each other, with the latter claiming that his

17   partnership interest was converted, among other things. *Id.* at 965-66. The court held that the partnership

18   interest was property subject to conversion because the partner "had a right to a share of the business's

19   assets and profits." *Id.* at 981. It explained that "this is the type of property that is the proper subject of a

20   claim of conversion because it is of ascertainable value." *Id.*

21           This Court agrees that Dr. Vahora's partnership interest is proper property for a claim of

22   conversion. While the partnership interest itself is an intangible, it represents Dr. Vahora's ownership of

23   the partnership's assets and profits, which are "definite, recordable amount[s]." *Fremont*, 148 Cal. App.

24   4th at 125. Dr. Vahora claims he held a 60% interest in the partnership. At the time of dissolution and

25   winding-up of partnership affairs, the partnership's assets and profits would be ascertainable and, thus,

1   so would the value of Dr. Vahora's interest. *See Fremont*, 148 Cal. App. 4th at 123; *Second Measure,*

2   *Inc.*, 143 F. Supp. 3d at 981. Accordingly, Dr. Vahora's partnership interest is proper property to support

3   his claim for conversion. Defendants' motion to dismiss Dr. Vahora's claim for conversion is DENIED

4   with respect to Dr. Vahora's partnership interest.

5          The remainder of Dr. Vahora's alleged property that Naeem converted, including the $380,000

6   Dr. Vahora infused into VDL and operational control over VDL, are not proper property subject to a

7   claim for conversion. Because Dr. Vahora claims that his partnership interest is 60% based on his initial

8   contribution and that his interest did not increase when he provided funds for operating costs of the

9   partnership, the $380,000 Dr. Vahora infused into VDL was a separate loan between VDL and Dr.

10  Vahora. *See* Cal. Corp. Code § 16401(e) ("[a] payment or advance made by a partner that gives rise to a

11  partnership obligation under subdivision (c) or (d) constitutes a loan to the partnership that accrues

12  interest from the date of the payment or advance."). Once Dr. Vahora gave the funds to VDL, "title to

13  those funds passed immediately to [VDL]. Since the money thus becomes the literal property of [VDL]

14  it cannot be tortuously converted by [VDL]." *Randy Horn D.D.S., Inc. v. High Point Services, Inc.*, No.

15  EDCV 12-01604 VAP (DTBx), 2013 WL 12114065, at *7 (C.D. Cal. Nov. 19, 2013) (quoting *Crocker-*

16  *Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977)). Furthermore,

17  operational control is an "abstract intangible property, such as business goodwill and business

18  strategies," and is "not [a] proper subject[] of conversion." *Second Measure, Inc. v. Kim*, 143 F. Supp.

19  3d at 981. Therefore, neither the funds Dr. Vahora loaned to VDL, nor its operational control are proper

20  property for Dr. Vahora's claim of conversion. Defendants' motion to dismiss Dr. Vahora's claim for

21  conversion for that property is GRANTED without leave to amend.[7]

22          **9.     Declaratory Judgment**

23  _____

24  [7] Defendants' also argue that Dr. Vahora's claim for conversion is barred by the statute of limitations. Doc. 8-1 at 21.
    However, Defendants limit their argument to Naeem's conversion of operational control of VDL. *See id.* Because the Court
    has dismissed Dr. Vahora's claim with respect to that property, Defendants' argument is moot. Accordingly, the Court does
25  not address Defendants statute of limitations argument.

In his ninth cause of action, Dr. Vahora seeks a declaratory judgment with respect to his rights in VDL. Compl. ¶ 259. Specifically, Dr. Vahora seeks a declaration that he "is 60% owner of and shareholder in VDL, with 60% of VDL's outstanding voting rights and entitlement to 60% of VDL's profits." *Id.* ¶ 260. Dr. Vahora also seeks a declaration that "VDL owes him in an amount in excess of $380,000 for repayment." *Id.* ¶ 261.

"Courts may decline [to] exercise jurisdiction where a declaratory judgment claim only seeks to review the legality of past conduct, or where it simply duplicates other, more germane causes of action, even if those cause of action fail." *Continental Casualty Co. v. Nationwide Mutual Ins. Co.*, No. CV 14–7326–GW(PLAx), 2015 WL 12832046, *7 (C.D. Cal. Jan. 15, 2015); *see* 28 U.S.C. § 2201(a) (providing that courts "*may* declare the rights and other legal relations of any interested party") (emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action").

Dr. Vahora's request for declaratory relief is duplicative of his claims for breach of an oral contract and conversion. Dr. Vahora has added nothing substantive to his declaratory relief claim. Because Dr. Vahora's claim for declaratory relief is duplicative of more germane causes of action, and an adequate remedy exists under those causes of action, the Court declines to address Dr. Vahora's claim for declaratory judgment. The claim is DISMISSED with leave to amend.

## VII. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Defendants' motions to dismiss (Doc. 8). The Court DENIES Defendants' motion to dismiss Dr. Vahora's entire first cause of action. The Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Dr. Vahora's entire second, third, fourth, fifth, sixth, and seventh causes of action, and Dr. Vahora's

eighth cause of action with respect to non-convertible property, as described above. The eighth cause of action will proceed only as to conversion of Dr. Vahora's "partnership interest," as described above. The Court DISMISSES Dr. Vahora's ninth causes of action with leave to amend. Any amended complaint shall be filed on or before April 24, 2017.

IT IS SO ORDERED.

Dated:   **April 3, 2017**                         **/s/ Lawrence J. O'Neill**
                                          UNITED STATES CHIEF DISTRICT JUDGE